UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

MAR - 4 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

M. WRIGHT,

                Plaintiff,

v.                                  Civil No. 2:19cv189

VIRGINIA PENINSULA
REGIONAL JAIL AUTHORITY, et al.,

                Defendants.

## OPINION AND ORDER

This matter is before the Court on a joint Motion to Dismiss filed by Defendants Virginia Peninsula Regional Jail Authority ("VPRJA") and J. Randall Wheeler ("Wheeler"), ECF No. 31, and a separate Motion to Dismiss filed by Defendant John Kuplinski ("Kuplinski"), ECF No. 34, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, VPRJA and Wheeler's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Kuplinski's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

From December 27, 2016 through October 2017, Plaintiff M. Wright ("Plaintiff" or "Wright") was incarcerated as a prisoner in

---

[1] The facts recited here come from the Amended Complaint and are assumed true only to decide the Motions to Dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

the Virginia Peninsula Regional Jail (VPRJ) located in Williamsburg, Virginia. Am. Compl., ECF No. 45 ¶¶ 3, 8. The jail is owned and operated by Defendant VPRJA. Id. ¶ 4. The individual Defendants were allegedly employed by VPRJA at the relevant times: Defendant Kuplinski was the Superintendent of VPRJA, id. ¶ 5, Defendant Wheeler was Chairman of the VPRJA Board of Directors during 2016, id. ¶ 6, and Defendant Henry Thomas Rhim ("Rhim") was a prison guard at the jail, id. ¶¶ 7, 9.

Between April 20, 2017 and June 30, 2017, Plaintiff was sexually assaulted by Rhim on ten to fifteen occasions. Id. ¶ 9. Plaintiff later "participated in the investigation of Rhim[] and swore out a warrant for his arrest," and Rhim was convicted of Carnal Knowledge of an Inmate by an Employee in Williamsburg/James City County Circuit Court. Id. ¶ 21.

Plaintiff brought this action on April 16, 2019. ECF No. 1. On August 12, 2019, the Court granted leave to amend the Complaint, ECF No. 29, and on that same date, Plaintiff filed an Amended Complaint, ECF No. 45. The Amended Complaint alleges seven counts: Count I against Defendants VPRJA, Kuplinski, and Wheeler pursuant to 42 U.S.C. § 1983; Count II against Defendant Rhim pursuant to 42 U.S.C. § 1983; Count III against Defendant Rhim for assault and battery; Count IV against VPRJA for assault and battery under a theory of respondeat superior; Count V for negligence against VPRJA, Kuplinski, and Wheeler; Count VI for intentional infliction

2

of emotional distress against Rhim; and Count VII for intentional infliction of emotional distress against VPRJA under a theory of respondeat superior. Id. ¶¶ 23-59.

On August 29, 2019, Defendants VPRJA and Wheeler filed their joint Motion to Dismiss. ECF No. 31. The Motion and accompanying Memorandum, ECF No. 32 ("VPRJA & Wheeler Memo"), argue that: Plaintiff has failed to state a § 1983 claim, the state law claims are time-barred, the VPRJA is entitled to sovereign immunity, and Defendant Wheeler is entitled to immunity under Va. Code § 15.2-1405. On August 30, 2019, Defendant Kuplinski filed his Motion to Dismiss. ECF No. 34. The Motion and accompanying Memorandum, ECF No. 35 ("Kuplinski Memo"), make several arguments that overlap with those asserted by his co-defendants. Kuplinski argues that: Plaintiff has failed to state a § 1983 claim, the state law claims are time-barred, and with respect to Count V for negligence, he had no special relationship with Plaintiff and owed no duty of care.

Plaintiff filed her responses to VPRJA and Wheeler's joint motion, ECF No. 37 ("Wright Response: VPRJA & Wheeler"), and Kuplinski's motion, ECF No. 38 ("Wright Response: Kuplinski"), on September 12, 2019 and September 13, 2019 respectively. VPRJA and Wheeler filed their reply on September 18, 2019. ECF No. 39 ("VPRJA & Wheeler Reply"). Kuplinski also filed his reply on September 18, 2019. ECF No. 40 ("Kuplinski Reply").

3

On September 26, 2019, Plaintiff moved for leave to file supplemental briefs to address a recent Virginia Supreme Court case. ECF No. 41. That motion was granted on October 9, 2019. ECF No. 43. Defendant Kuplinsky filed a Supplemental Brief in support of his Motion to Dismiss on October 14, 2019. ECF No. 44. Plaintiff filed a Supplemental Memorandum in opposition to Defendants' Motion to Dismiss on November 4, 2019. ECF No. 46. Defendants Wheeler and VPRJA filed a joint Supplemental Brief in support of their Motion to Dismiss on November 8, 2019. ECF No. 48.

## II. STANDARD OF REVIEW

The well-established Rule 12(b)(6) standard of review permits dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned,

4

the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted). Although the truth of well-pled facts is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Additionally, while it is generally not appropriate to consider the viability of affirmative defenses at the 12(b)(6) stage, in 'relatively rare circumstances' where all of the facts 'necessary to the affirmative defense clearly appear on the face of the complaint,' an affirmative defense, including a defense seeking to demonstrate that a case is time-barred, may be resolved on a motion to dismiss." Waites v. Wells Fargo Bank, N.A., No. 2:15cv353, 2016 WL 659084, at *2 (E.D. Va. Feb. 16, 2016) (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to ". . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . ." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." Id. (internal citations omitted).

### III. DISCUSSION

### A. Section 1983

The Court begins by addressing Defendants Kuplinski, Wheeler, and VPRJA's various arguments asserting that this Court should dismiss Count I because Plaintiff has failed to state a valid § 1983 claim. With respect to Count I, Plaintiff alleges that Defendant VPRJA has deprived Plaintiff of her Eighth Amendment rights in violation of 42 U.S.C. § 1983 under a theory of municipal liability. Am. Compl. ¶¶ 4, 23-28. Plaintiff alleges Defendants Wheeler and Kuplinski violated § 1983 in their individual capacities. Am. Compl. ¶¶ 5-6.

## 1. **Municipal Liability**

First, Defendant asserts that Plaintiff has failed to allege that VPRJA maintained an unconstitutional policy, and asks this Court to therefore dismiss Plaintiff's § 1983 claim. This Court has recently considered and rejected an identical argument in McCaffrey v. Va. Peninsula Reg'l Jail Auth., No. 4:18cv154, 2019 WL 5445752, at *5-8 (E.D. Va. Oct. 4, 2019), report and recommendation adopted, No. 4:18cv154, 2019 WL 5445296 (E.D. Va. Oct. 23, 2019).

In McCaffrey, which is a case brought against VPRJA by another inmate victim of sexual assault by Rhim, the Court explained that to state a § 1983 claim against a municipal entity, Plaintiff must allege that VPRJA "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or that it had adopted a "governmental 'custom'" that deprived Plaintiff of her constitutional rights. Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). The unconstitutional official policy or custom can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

7

Id. (quoting Lytle v. Doyle, 326 F.3d 463, 472 (4th Cir. 2003)).

Further, Plaintiff must also show a "direct causal link between the municipal action and the deprivation of federal rights." Id. (quoting Bd. of Cty. Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). To establish the link, Plaintiff must "demonstrate that 'the specific violation was made reasonably probable by permitted continuation of the custom,' and that a 'failure to correct the known practices must be such as to make the specific violation "almost bound to happen, sooner or later."'" Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)).

Here, Plaintiff has alleged the existence of a custom or policy. Plaintiff alleges that it was VPRJA's "custom, policy and practice" to leave prisoners "alone with and under the exclusive control of VPRJ guard Rhim when he was unmonitored, unsupervised and unchaperoned." Am. Compl. ¶¶ 9, 13 ("VPRJA has a longstanding policy, custom and practice of requiring female prisoners to be alone with unsupervised, unmonitored, and unchaperoned male guards[.]").

Plaintiff has also met the causation requirement. Plaintiff alleges that the custom or policy was known and permitted to continue. Id. ¶ 16 ("On repeated prior occasions, VPRJA itself had determined and concluded that female inmates had been sexually molested by its male guards in the VPRJ. . . . VPRJA has been on

8

notice for years that numerous additional female inmates had complained of sexual assault by guards at VPRJ, but VPRJA persisted in its policy, custom, and practice[.]") (emphasis added). Plaintiff has also alleged that the policy was the "proximate[]" and "inevitable cause" and the "moving force" for the sexual assault. Id. ¶¶ 12-14, 17-19. Further, Plaintiff alleges the specific violation resulted from the policy as the policy caused "Rhim and Plaintiff [to be left] alone, not visible to anyone, either directly or via any electronic surveillance device, because VPRJA policy required Plaintiff to be there with him under such circumstances." Id. ¶ 15.

VPRJA heavily relies on Heywood v. Va. Peninsula Reg'l Jail Auth., 217 F. Supp. 3d 896 (E.D. Va. 2016), but such reliance is unavailing. Defendant's argument is, in essence, that a few isolated incidents of sexual assault are insufficient to demonstrate a policy or custom. However, as discussed in McCaffrey, Heywood dismissed an inmate's sexual assault claims on summary judgment where plaintiff admitted that she had no evidence of a policy or custom. McCaffrey, 2019 WL 5445752, at *4-5 (discussing Heywood, 217 F. Supp. 3d at 903)).[2] Here, a policy or

---

[2] The Court notes that the plaintiff in Heywood failed at summary judgment because the four sexual assaults she suffered were insufficient to demonstrate "an unconstitutional policy." 217 F. Supp. 3d at 903. However, since the Heywood claim, "there have been at least six substantiated claims of sexual assault in [VPRJA]—including another pending case against Mr. Rhim[.]" McCaffrey, 2019 WL 5445752, at *5. As McCaffrey suggests, the existence of prior cases like Heywood evidences a potential link between a

9

custom is alleged. An argument about whether an alleged policy _exists_ is a question of fact for resolution at summary judgment or trial.

For the reasons stated above, the Court finds that Plaintiff has adequately alleged a § 1983 claim for municipal liability, and the motion to dismiss Count I against VPRJA is **DENIED**.

## 2. Individual Liability

As discussed above, Count I asserts a § 1983 claim against VPRJA on the basis of municipal liability, and against Defendants Wheeler and Kuplinski in their individual capacities. Defendant Kuplinski seeks to dismiss the § 1983 claim, to the extent it is brought against him in his individual capacity, on the grounds that Plaintiff has failed to allege that Kuplinski was liable in his capacity as the superintendent of VPRJA or in his capacity as Rhim's supervisor. Defendant Wheeler also appears to challenge whether Plaintiff has stated a § 1983 claim against him in his individual capacity, tacking on such argument at the end of a section concerning statutory immunity. ECF No. 32 at 19 ("[T]his Court opined that a policy of having unchaperoned male guards supervising female inmates in the VPRJ medical unit may be

---

lack of response to sexual assaults at VPRJ, and a deprivation of Plaintiff's rights resulting from VPRJA allegedly turning a blind eye to the assaultive events. _Id._ That is because these previous substantiated instances of sexual assault at the same VPRJ prison suggest the possibility of an unconstitutional policy on the basis that the violations were "persistent and widespread." _Lytle_, 326 F.3d at 472.

considered negligent, but without more, not unconstitutional.").

The Fourth Circuit has held that supervisory officials may be held individually liable in certain circumstances for the constitutional injuries inflicted by their subordinates under § 1983 if a plaintiff establishes supervisory liability. Shaw v. Stroud, 13 F.3d 791, 789 (4th Cir. 1994). Supervisory liability requires:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id., at 799 (quotations omitted).

As Plaintiff concedes, the Amended Complaint is devoid of any allegation that Kuplinski or Wheeler "had actual or constructive knowledge that" Rhim was sexually assaulting inmates. Id. The Amended Complaint only alleges that they had "actual knowledge of high rates sexual assaults [sic] on female prisoners by guards at VPRJ, and throughout the Commonwealth and the country[.]" Am. Compl. ¶ 12. However, the test requires knowledge of conduct by the specific "subordinate," not general risks. Further, there are no factual allegations in the Amended Complaint that Kuplinski or Wheeler were deliberately indifferent despite such knowledge,

and/or that any such indifference led to Plaintiff's sexual assault. See Shaw, 13 F.3d at 799. The Amended Complaint therefore fails to allege facts sufficient to plead a supervisory liability claim.

Notwithstanding the absence of a plausible claim for supervisory liability under Shaw, Plaintiff contends that prison authorities may be sued under § 1983 in their individual capacity for their role in promulgating an unconstitutional custom or policy. That is, Plaintiff contends that the test for individual liability under § 1983 for prison officials is the same as the test for municipal liability discussed above. Wright Response: Kuplinski at 5 ("Kuplinski, however, misapprehends the reach of 'policy or custom liability.' It certainly does reach beyond the municipalities themselves to individual state actors in their personal capacities."). The Fourth Circuit appears to have expressly rejected such an argument. Randall v. Prince George's County, 302 F.3d 188, 206-07, 210 (4th Cir. 2002) (inquiring into the existence of a policy to assess municipal liability, but employing separate analysis to determine individual supervisor's liability); Mikkelsen v. DeWitt, 141 F. App'x 88, 90-91 (4th Cir. 2005) ("Debating whether a public employer has adopted an unconstitutional "custom" or "policy" is a question to be asked when examining the basis for municipal liability under § 1983. It is not the right question to ask when confronting a supervisor's

12

potential liability in his individual capacity.") (internal citation omitted).

Plaintiff nonetheless attempts to frame the case so that the applicable standard is that of Farmer v. Brennan, where the Supreme Court held that a prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety, but only if he knows that inmates face a substantial risk of serious harm and disregards that risk. 511 U.S. 825, 837 (1994). Under the Farmer standard, "deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known." Makdessi v. Fields, 789 F.3d 126, 136 (4th Cir. 2015). Plaintiff claims to have met this standard with her allegation that no jail official:

> could have reasonably failed to realize that [the VPRJA policy] renders sexual assaults on female prisoners reasonably probable and almost bound to happen sooner or later, not only because of VPRJ's known history of sexual assaults at VPRJA under essentially identical circumstances, but also because of the well known atrociously high incidence of sexual assaults against female prisoners throughout the Commonwealth of Virginia and the United States, which . . . makes it obvious to Defendants that assaults on Plaintiff . . . were bound to happen from time to time.

Am. Compl. ¶ 25.

However, Plaintiff's cases are inapposite here because those cases involved official capacity claims. For instance, in Farmer, the director of the bureau of prisons and the prison warden were "sued only in their official capacities." 511 U.S. 830. The same

is true of Cash v. County of Erie, 654 F.3d 324, 328 (2d Cir. 2010), as well as Poore v. Glanz, 724 F. App'x 635, 638 (10th Cir. 2018), where the prison officials were held liable in their official capacities. That is, Farmer, Cash, and Poore concerned municipal liability claims. Cash 654 F.3d at 343; see also Makdessi, 789 F.3d 126, 131 (suing the guards who were on-duty and in the cell block while the plaintiff was attacked rather than higher level prison officials, although it is not clear from the prisoner's pro se submissions whether the guards were sued in their official or individual capacities). These cases underscore that the standard in Shaw, discussed above, is the proper framework to use in determining whether an official may be individually liable under § 1983. In other words, alleged imputed knowledge of a policy or custom cannot support individual liability. As discussed, Plaintiff has failed to meet the supervisory individual liability standard as there are no allegations of knowledge by Kuplinski or Wheeler of Rhim's conduct, indifference in the face of that knowledge, or causation.

In light of Fourth Circuit precedent that rejects individual liability under § 1983 on the basis of an unconstitutional policy, and the lack of any allegations in the Amended Complaint that would establish supervisory individual liability, the Court **GRANTS** the Motions to Dismiss as to Defendants Kuplinski and Wheeler, and

Count I is **DISMISSED** as to those two Defendants.[3]

## B. Statute of Limitations

Next, Defendants Kuplinski, Wheeler, and VPRJA argue that the various state law claims are time barred pursuant to Va. Code § 8.01-243.2, which requires that any action by a "person confined in a state or local correctional facility" must be brought "within one year after [the] cause of action accrues[.]" Va. Code § 8.01-243.2. They therefore contend that the latest date Plaintiff could have brought her state law claims was June 30, 2018, one year after the date of the last sexual assault which occurred on June 30, 2017. Kuplinski Memo at 7; VPRJA & Wheeler Memo at 11. In order to succeed at the 12(b)(6) stage, these Defendants must show that all of the facts necessary to their statute of limitations affirmative defense "clearly appear on the face of the complaint." Waites v. Wells Fargo Bank, N.A., No. 2:15cv353, 2016 WL 659084, at *2 (E.D. Va. Feb. 16, 2016) (emphasis added) (internal citations omitted).

Plaintiff concedes that the one year statute of limitations in Va. Code § 8.01-243.2 applies here, but she contends that Va. Code § 8.01-229(K) tolled the statute of limitations during the

---

[3] Plaintiff does not seek leave to amend her Complaint. Although a court may sua sponte grant leave to amend, CSX Transportation, Inc. v. Norfolk S. Ry. Co., No. 2:18cv530, 2019 WL 4564564, at *16 (E.D. Va. Sept. 9, 2019), the Court declines to do so here as Plaintiff has already had an opportunity to cure any defects when she was previously granted leave to amend the Complaint. ECF No. 29.

pendency of Defendant Rhim's criminal proceedings. Wright Response: VPRJA & Wheeler at 8. Section 8.01-229(K) states:

> In any personal action for damages, if a criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. For purposes of this subsection, the time during which a prosecution is pending shall be calculated from the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as an accused in such a prosecution, whichever date occurs first, until the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last. Thereafter, the civil action may be brought within the remaining period of the statute or within one year, whichever is longer.

Va. Code § 8.01-229(K) (emphasis added).

These three Defendants collectively attack the applicability of § 8.01-229(K) in this case in a number of ways.[4] First, Kuplinski argues that for § 8.01-229(K) to apply, the civil defendants in a subsequent civil case must have also been defendants in the earlier related criminal prosecution, which is not the case here because only Rhim was a defendant in a related

---

[4] In McCaffrey, VPRJA initially made the same statute of limitations argument, but conceded at a hearing on September 10, 2019 that the McCaffrey plaintiff's claims were timely, withdrawing the motion to dismiss on that ground. McCaffrey, 2019 WL 5445752, at *5 ("During the hearing on September 10, 2019, VPRJA's attorney conceded that Ms. McCaffrey's state law claims were timely filed by virtue of Mr. Rhim's criminal prosecution and the operation of Virginia Code § 8.01-229(K). Accordingly, VPRJA withdrew its request to dismiss counts 6, 8, 11, and 13 on statute of limitations grounds."). VPRJA has not withdrawn its statute of limitations argument in this case.

16

criminal matter. Kuplinski Memo at 9. Second, VPRJA and Wheeler argue that § 8.01-229(K) does not apply because the facts necessary to prove the criminal charges against Rhim for sexual assault are not the same as those necessary to determine whether VPRJA and Wheeler were negligent in protecting Plaintiff from sexual assault, and therefore Plaintiff's claims do not meet the statutory requirement that the cases "aris[e] out of the same facts." VPRJA & Wheeler Memo at 12-13. Finally, Kuplinski argues that the statute is ambiguous, and ambiguity should be resolved in Defendants' favor, Kuplinski Memo at 8, because the statute of limitations should not be tolled "unless the legislature makes unmistakably clear that such is to occur in a given case." Burns v. Bd. of Supervisors, 227 Va. 354, 358 (1984). Each of these arguments are addressed in the sections below.

## 1. Party Uniformity Requirement

Kuplinski first argues that because the criminal prosecution was against Rhim only, and not VPRJA, Wheeler, or Kuplinski, it does not "aris[e] out of the same set of facts." In support, Kuplinski cites to Scott v. Coleman, a case in which a toddler was killed in a hit and run accident and the person responsible, Coleman, pled guilty to criminal charges and was convicted and incarcerated. 83 Va. Cir. 78, 78 (Halifax Cty. 2011). Later, when the personal representative of the toddler's estate sued a number of defendants in addition to Coleman in a civil action, one

17

of the additional civil defendants, Brooks, moved to dismiss the claims, arguing that the statute of limitations had run, and § 8.01-229(K) did not toll the limitations period. Id. The court agreed with Brooks that while § 8.01-229(K) applied to Coleman, it did not apply to Brooks, because it did not "follow . . . that other co-defendants or prospective co-defendants in the [civil] action, against whom no criminal charges were ever filed involving the [hit and run], would or should be subject to the tolling of the statutory period of limitations simply and only because another co-defendant (and not the [p]laintiff, nor decedent) was involved in a related criminal prosecution." Id. at 79-80. Importantly, however, the court stated that "[t]he facts that led to [] Coleman's criminal prosecution involved a hit and run resulting in the death of the decedent, and Brooks was in no way involved in the accident and the facts and circumstances surrounding the decedent's death." Id. at 80-81 (emphasis added).

At the time Scott was decided, it ran counter to McEvily v. K-Mart Corp., in which an earlier court rejected a defendant's argument to restrict § 8.01-229(K) to only situations where a plaintiff's civil action is brought against a party that is "already a defendant in a criminal proceeding arising out of the same facts as the civil cause of action." 73 Va. Cir. 51, 57 (Fairfax Cty. 2007). The court in McEvily held that the language in the statute, specifically the use of the word "any," showed

18

that "[a] plain reading of the statute does not support Kmart's limited interpretation." Id. The court concluded that the statute would toll a plaintiff's civil action against an individual who was not already a defendant in a related criminal proceeding if such related criminal proceeding arose "out of the same facts" as the civil cause of action, meaning that the same underlying activity was the basis of both lawsuits.  Id.[5]

This Court agrees with the McEvily court's reading of § 8.01-229(K).  The Virginia legislature could have written the statute in a way that limited its applicability to only those parties who were defendants in an earlier criminal prosecution, but it did not.  Instead, the statute has expansive language that directs courts to look to the facts that gave rise to the cases, rather than to the parties involved.  As such, Kuplinski is asking this Court to read a requirement into the statute that is not found in the language of the statute.  Most importantly, the Scott court's own declaration that the defendant there "was in no way involved in the accident and the facts and circumstances surrounding the decedent's death" arguably distinguishes the case to such a degree that it calls into question its entire applicability, given that

---

[5] The court in Scott attempted to draw a distinction with McEvily in order to render its decision inapplicable, however, this Court finds McEvily to still be instructive here.  See Scott, 83 Va. Cir. at 80 (arguing that McEvily was inapplicable to the facts in Scott because in McEvily, the plaintiff was the earlier criminal defendant attempting to use § 8.01-229(K) in a later civil proceeding where he had become the plaintiff, a different posture than that seen in Scott).

19

the statute directs courts to consider whether the underlying facts gave rise to both suits.  Id. at 80-81 (emphasis added).[6] Therefore, the Court rejects Kuplinski's argument that the tolling statute does not apply because of the lack of party uniformity.

## 2. Factual Congruity

Next, VPRJA and Wheeler argue that § 8.01-229(K) does not apply because the statutory language mandating that the cases "aris[e] out of the same facts" requires that the facts necessary to prove the criminal charges against Rhim for sexual assault must be the same facts necessary to determine whether VPRJA and Wheeler were negligent in protecting Plaintiff from sexual assault. Stated differently, these Defendants argue that the statute is limited to cases where the facts needed to prove the claims in the criminal case are the same facts needed to prove the claims in the civil case.  There is a conflict between district courts within this Circuit regarding this question of interpreting the "same facts"

---

[6] Kuplinski also argues that his proposed reading—that tolling applies only to the claims against the defendant who is also charged in a criminal proceeding—is supported by the text, Kuplinski Reply at 4, because it states that the tolling period shall be measured from "the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as an accused in such a prosecution[.]"  Va. Code § 8.01-229(K) (emphasis added).  The Court disagrees with this reading of the statute.  The statute envisions that the tolling period begins when one of three events occur: the issuance of a document authorizing arrest, issuance of a charging document, or the appearance by a civil defendant who is also charged in a criminal proceeding in court.  Only in the third instance does the text of the statute even arguably restrict the tolling provision to claims against a civil defendant who is also a criminal defendant.  That is, the text of the statute does not state that the tolling period begins only if the criminal defendant is also a defendant in the civil matter and is arrested or charged.

20

language, and the Court has found no case from the Fourth Circuit regarding the question.

In the Eastern District of Virginia civil case Pinder v. Knorowski, the earlier related criminal case was based on evidence that police officers had gathered during an illegal search of Pinder's home. 660 F. Supp. 2d 726, 729-30 (E.D. Va. 2009). Pinder was then arrested, charged, and confined, but the case was later dismissed after he won a motion to exclude the evidence. Id. at 730. After the statute of limitations period had passed, Pinder sued the police officers in a civil action, arguing that the time he spent as the criminal defendant in the earlier criminal matter should toll the statute of limitations. Id. The civil defendants, the officers who conducted the illegal search, argued that the civil matter did not "arise out of the same facts" because the plaintiff would have to prove different allegations in order to prove his civil case that the officers falsely arrested him, conducted an illegal search, and falsely imprisoned and maliciously prosecuted him, than the prosecution would have had to prove in a criminal case to convict the plaintiff of possessing illegal items. Id. at 732. The court agreed with Pinder that a plain reading of the statute demonstrated that the defendants were arguing for "an overly narrow interpretation," and that because both cases arose out of the same underlying event, the illegal search of the house, they "arose out of the same facts," and

21

tolling was appropriate. Id.; see also Routon v. Overton, No. 7:18cv112, 2019 U.S. Dist. LEXIS 54060 (W.D. Va. March 28, 2019) (citing Pinder favorably for the proposition that "the court must compare the facts necessary for the underlying criminal charge with the facts giving rise to the civil action" and toll the limitations period in situations such as when the "criminal and civil cases both stem[] from [the] search of [the] plaintiff's residence"); Moran v. Roanoke City Police Department, No. 7:09cv187, 2009 U.S. Dist. LEXIS 76059 (W.D. Va. Aug. 26, 2009) (applying § 8.01-229(K) in a civil case against police officers for racial profiling, false arrest, and unlawful search arising from a traffic stop where the civil plaintiff was previously charged criminally for possession of a firearm found during the traffic stop); Gladden v. Oberholzer, No. 3:19cv9, 2019 U.S. Dist. LEXIS 214879, (W.D. Va. June 20, 2019), report and recommendation adopted, No. 3:19cv9, 2019 U.S. Dist. LEXIS 214348 (W.D. Va. Dec. 12, 2019) (applying § 8.01-229(K) in a civil case against police officers for excessive force arising from a traffic stop where the civil plaintiff was previously charged criminally for driving with a suspended license during the traffic stop).

However, in a later case, a judge in the Western District of Virginia appeared to directly disagree with Pinder's view that the "arising out of the same facts" language did not dictate that the criminal and civil cases require the same set of facts be proven

22

in order to make out both of their respective claims. Brown v. Edmonds, No. 7:12cv00267, 2012 U.S. Dist. LEXIS 90093 (W.D. Va. June 29, 2012). In Brown, the plaintiff, a prison inmate, told a guard multiple times that he needed to be separated from his cellmate for safety reasons. Id. at *1. Later on, his cellmate savagely beat him and was subsequently tried and convicted of malicious wounding. Id. at *5-6. After the statute of limitations period had passed, the plaintiff sued prison officials civilly, stating that they were deliberately indifferent to the risk he faced from his cellmate. Id. at *3. The court concluded that § 8.01-229(K) did not toll the limitations period because "[t]he facts necessary to prove malicious wounding beyond a reasonable doubt in Virginia criminal proceedings are not the same facts to determine whether defendants were personally aware of facts indicating a substantial risk of serious harm to plaintiff and whether defendants actually recognized the existence of that risk." Id. at *6. As the plaintiff's civil action "focuse[d] on what defendants knew and how they acted before the attack, not whether the cellmate maliciously wounded plaintiff," plaintiff's civil action "did not arise out of the same facts as the cellmate's malicious wounding." Id. at 6.

This Court agrees with the court in Pinder, and finds that the statute is not limited to cases where the facts needed to prove the claims in the criminal case are the exact same facts needed to

prove the claims in the civil case. The statute simply states "if a criminal prosecution arising out of the same facts is commenced," then the tolling period may apply. Va. Code § 8.01-229(K) (emphasis added). If the legislature had intended to limit the statute to situations in which the facts necessary to make out a claim in both cases had to be the same, they could have done so, but they did not. Instead, this Court reads the text of the statute to refer to the general underlying facts surrounding the event that led the parties to bring cases in criminal and civil court.[7] This Court declines to adopt Defendants Wheeler and VPRJA's narrow interpretation that would, in effect, read the statute as requiring that the cases arise out of the same exact facts and involve no additional facts whatsoever, i.e. that the sexual assaults are the basis of the criminal claims here, but the additional facts regarding these Defendants' continuation of the allegedly dangerous policy in the civil case means § 8.01-229(K) does not apply. As such, this Court agrees with Pinder's broader view of the statute.

---

[7] Plaintiff highlights several other reasons that limit Brown's relevance to this case, despite it also involving a situation where an injured inmate later brings a civil case against jail officials. For example, Brown makes no mention of Pinder at all despite it analyzing the same issue the Pinder court had previously considered. Wright Response: VPRJA & Wheeler at 9-10. In addition, Brown was decided during a prisoner petition screening phase pursuant to U.S.C. § 1915A, rather than at a motion to dismiss or summary judgment phase. Id. Finally, § 8.01-229(K) would not have saved the claim in Brown anyway because the civil claim was filed beyond the date when the tolling period could have saved it. Id.

24

### 3. **Ambiguity of the Statute**

Finally, Defendants Kuplinski, Wheeler, and VPRJA claim that the tolling statute is at best ambiguous, and therefore the limitations period should not be tolled. See Burns, 227 Va. at 358 (explaining that statutes of limitations should not be tolled unless the legislature makes its intent to do so unmistakably clear). However, two courts, have already found the language to be unambiguous. See McEvily, 73 Va. Cir. at 57 ("A plain reading of the statute does not support Kmart's limited interpretation."); see also Pinder, 660 F. Supp. 2d at 734 (agreeing with McEvily and holding that the section "is not ambiguous, and therefore the Burns admonition does not apply."). In addition, none of the other cases discussed thus far have held that the statute is ambiguous. This Court finds that the statute is not ambiguous, and therefore the Burns admonition does not apply.

### 4. **Application of § 8.01-229(K)**

Having considered the above arguments the Court finds that, accepting all of the allegations in the Amended Complaint as true and drawing reasonable inferences in favor of Plaintiff, there was "a criminal prosecution arising out of the same facts" as those alleged in this civil case. Defendant Rhim was convicted of Carnal Knowledge of an Inmate by an Employee after "Plaintiff made a complaint with VPRJA of the sexual abuse by Rhim, fully participated in the investigation of Rhim, and swore out a warrant

for his arrest." Am. Compl. ¶ 21. Those same acts are the basis of Plaintiff's instant state law claims for assault and battery, negligence, and intentional infliction of emotional distress.[8] This is similar to how the illegal search of the plaintiff's home in Pinder led to both the failed criminal prosecution of the plaintiff, and his later civil lawsuit against the officers who conducted the illegal search, and is unlike the situation in Scott, in which the court stated that the civil defendant was "in no way involved" with the hit and run that led to both the criminal and civil lawsuits.[9]

Defendants Kuplinski, Wheeler, and VPRJA allege that the

---

[8] At the motion to dismiss stage, the Court must accept all of the allegations in the Amended Complaint as true and draw reasonable inferences in favor of Plaintiff. A reasonable inference from the allegations in the Amended Complaint is that Plaintiff was involved in some manner in the earlier criminal case against Defendant Rhim, and therefore both cases "arise out of the same facts." This inference is supported by statements made in VPRJA and Wheeler's filing. VPRJA & Wheeler Memo at 12-13 ("The facts pertinent to Rhim's criminal proceedings focused on the specific physical interactions between Rhim and plaintiff."). However, the Court notes that facts developed during the course of litigation may no longer support the inference the Court has the obligation to draw at this stage, and the Court may yet find that the facts of this civil action are not the "same facts" as those in Defendant Rhim's earlier criminal proceeding, should, for example, it become clear that Plaintiff or the events she alleges in the Amended Complaint played no part in the earlier criminal proceeding.

[9] Under these Defendants' interpretation of Va. Code § 8.01-229(K), Plaintiff would have had to bring her state law claims within a year against VPRJA, Wheeler, and Kuplinski in state court. Her § 1983 claim against the same Defendants has a two-year statute of limitations and could be brought in federal court. Wilson v. Garcia, 471 U.S. 261, 280 (1985) (state statute for personal injury applies to § 1983 claims); Va. Code § 8.01-243(A) (two-year statute of limitations applies to personal injury claims). Her claims against Rhim would be subject to tolling, and could be brought even later. Such piecemeal litigation does not promote judicial efficiency or economy, and may prejudice parties without evidence from the underlying criminal proceeding.

running of the statute of limitations began on June 30, 2017, the last time Plaintiff was sexually assaulted by Rhim. Kuplinski Memo at 7; VPRJA & Wheeler Memo at 11.[10] Aside from alleging June 30, 2017 as the date when the one year statute of limitations period began to run, these Defendants have not alternatively assumed tolling applied and alleged what they believe to be the dates the tolled period began and ended. Defendants have simply argued that tolling was completely inapplicable here based on the text of § 8.01-229(K), an argument this Court has rejected. See Va Code. § 8.01-229(K).

It is less clear whether these Defendants intended to argue that Plaintiff's state law claims would still be time barred, even if § 8.01-229(K) applied and the limitations period was tolled. If they did intend to make this argument at the motion to dismiss stage, they must demonstrate that the facts necessary to show that the claim is still untimely—even with the limitations period being tolled pursuant to § 8.01-299(K)—"clearly appear on the face of

---

[10] As stated previously, Virginia Code § 8.01-243.2 dictates that the statute of limitations is either one year from when "the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later." Va. Code. § 8.01-243.2. The cause of action "shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person." Va. Code § 8.01-230. The last day Plaintiff was sexually assaulted by Rhim was on June 30, 2017. Am. Compl. ¶ 9. Plaintiff was released from incarceration in October 2017, Am. Compl. ¶ 8, so Kuplinski argues that October 31, 2017 was the final day she could have used jail administrative remedies. Am. Compl. ¶ 8; Kuplinski Memo at 7. As such, Defendants Kuplinski, Wheeler, and VPRJA argue that one year from June 30, 2017 is later than six months from October 31, 2017, and therefore the claim would be time barred after June 30, 2018.

the complaint." Waites, 2016 WL 659084, at *2. When confronting

a motion to dismiss, the court ordinarily "may not consider any

documents that are outside of the complaint, or not expressly

incorporated therein, without converting the motion into one for

summary judgment;" however, there "are a number of exceptions to

this rule," including "official public records, documents central

to a plaintiff's claim, and documents sufficiently referred to in

the complaint, so long as the authenticity of these documents is

not disputed." Penn v. 1st S. Ins. Servs., Inc., 324 F. Supp. 3d

703, 713-14 (E.D. Va. 2018) (citing Witthohn v. Fed. Ins. Co., 164

F. App'x 395, 396-97 (4th Cir. 2006)). Despite Waites' admonition

that the facts necessary for Defendant to make a statute of

limitations argument must be on the face of the complaint, this

language has not been read as barring "consideration of other

material that may be properly reviewed in resolving a motion to

dismiss." Id. at 714 n.9 (citing Guerrero v. Weeks, 1:13cv837,

2013 WL 5234248, at *4 n.2 (E.D. Va. Sept. 16, 2013), aff'd, 555

F. App'x 264, 265 (4th Cir. 2014) (per curiam)).

In her Amended Complaint, Plaintiff did not allege what date

Rhim was initially arrested or charged, but she did reference the

criminal case against him. See Am. Compl. ¶ 21 ("Rhim was

ultimately charged, tried and found guilty of Carnal Knowledge of

an Inmate by an Employee"). In her subsequent briefs, Plaintiff

states that she believes Rhim was arrested and charged on October

12, 2017, and was sentenced on November 27, 2018. Wright Response:
VPRJA & Wheeler at 8. To support her claim of November 27, 2018
as the sentencing date, Plaintiff attaches the Williamsburg/James
City County Circuit Court Sentencing Order signed and dated on
November 27, 2018. ECF No. 38-1. A search of the Virginia
Judiciary Online Case System shows that Rhim was indicted by a
grand jury on January 17, 2018.[11] As Plaintiff references the
criminal case against Rhim in her Amended Complaint and the
documents related to that litigation are in the public record, the
Court will consider them to decide this motion. See Guerrero,
2013 WL 5234248 at *4 n.2 ("Plaintiff references the 'county
litigation' in her complaint and the documents related to this
litigation are in the public record. The Court therefore takes
judicial notice of the documents in Civil Action No. 1:09cv1313
(JCC/TRJ) 'and will consider these documents at the motion to
dismiss stage and in the statute of limitations analysis.'")
(internal citations omitted).

Based on the above dates, Rhim's time for appeal of his
criminal conviction would have expired on December 27, 2018, Va.

---

[11] The four Williamsburg/James City County Circuit Court cases against Rhim
are CR17027186-00, CR18027361-00, CR18027364-00, and CR18027365-00.
CR17027186-00 lists October 12, 2017 as Defendant's arrest date. The other
three cases list February 8, 2018 as the arrest date. All four cases list
January 17, 2018 as the date when a criminal indictment was returned against
Rhim. The Court, therefore, views January 17, 2018 as the proper date to
begin tolling the limitations period; however, for reasons that are
discussed below, Plaintiff's state law claims would be timely if any of
these three dates were used. See Va. Code § 8.01229(K).

29

S. Ct. Rule 5A:6 ("No appeal shall be allowed unless, within 30 days after entry of final judgment . . . counsel files . . . a notice of appeal."), meaning the limitations period would have been tolled between January 17, 2018 (Rhim's criminal indictment) and December 27, 2018 (Rhim's appeal expiration). See Va Code. § 8.01-229(K). Va. Code § 8.01-229(K) provides Plaintiff with either one year from the end of the tolled period (i.e. one year from December 27, 2018) or the remaining period of the statute of limitations (i.e. about five and a half months from December 27, 2018 because that is the length of time between Rhim's criminal indictment on January 17, 2018 and the expiration of the statute of limitations on June 30, 2018), whichever is longer. Va. Code § 8.01-229(K). Plaintiff therefore had one year from December 27, 2018 to commence the lawsuit, which she satisfied when she commenced the instant action on April 16, 2019. Therefore, Defendants Kuplinski, Wheeler, and VPRJA have failed to show that the facts necessary to determine that the claims are untimely "clearly appear on the face of the complaint," and furthermore, the facts available from the public records show that such showing likely cannot be made. Waites, 2016 WL 659084, at *2.

For the reasons stated above, the Court finds that these Defendants have, at this stage, failed to meet their burden to show that the state law claims are time barred, and **DENIES** the Motions to Dismiss as to these three Defendants.

## C. Sovereign Immunity

Defendant VPRJA next seeks to dismiss the state law claims against it on the basis of sovereign immunity. This Court already considered and rejected the identical argument in Heywood v. Va. Peninsula Reg'l Jail Auth. and sees no reason to depart from the reasoning in Heywood, which is summarized below. No. 2:15cv195, 2015 WL 5026188, *6 (E.D. Va. Aug. 21, 2015).[12]

A complainant may not maintain a tort action against the Commonwealth of Virginia unless it consents to suit or a statute creates such consent. McCaffrey, 2019 WL 5445752, at *6 (citing Va. Electric & Power Co. v. Hampton Redevelopment & Housing Auth., 225 S.E.2d 364 (Va. 1976)). Municipalities and municipal corporations also enjoy some immunity under Virginia law, but only for torts committed while acting in a governmental capacity. Id. (citing Hampton Redevelopment, 225 S.E.2d at 367-68).

"Thus, an entity created under Virginia law [like VPRJA] may establish that it is immune from an action in negligence in one of two ways." Heckenlaible v. Va. Reg'l Peninsula Jail Auth., No. 4:06cv25, 2006 WL 3196750, at *3 (E.D. Va. Nov. 1, 2006). It may either show that it is an arm or agency of the state or "that it

---

[12] VPRJA also claimed sovereign immunity in Heckenlaible v. Va. Reg'l Peninsula Jail Auth. and McCaffrey, and this Court rejected the argument in both instances. Heckenlaible, No. 4:06cv25, 2006 WL 3196750, at *3 (E.D. Va. Nov. 1, 2006); McCaffrey, 2019 WL 5445752, at *6-8. VPRJA, having had multiple "full and fair opportunit[ies]" to litigate this issue, is likely subject to non-mutual issue preclusion. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 328 (1979).

is entitled to the immunity afforded a municipal corporation by showing that it is appropriate for the court to treat the entity as such." Id.

The Fourth Circuit has concluded that regional jail authorities are not arms or agencies of the state. See, e.g., Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002) ("We are of opinion that the Regional Jail Authority is not an arm of the State for purposes of Eleventh Amendment immunity."). Therefore, the only question that remains is whether "it is appropriate for the court to treat" VPRJA as a municipal corporation. Heckenlaible, 2006 WL 3196750, at *3.

To determine whether an entity should be considered a municipal corporation, the Court first must consider whether the entity possesses any of the six essential "attributes of a municipal corporation." Hampton Roads Sanitation Dist. Comm'n v. Smith, 193 Va. 371, 376-77 (1952). The six attributes of a municipal corporation are:

> (1) Creation as a body corporate and politic and as a
> political subdivision of the Commonwealth;
> (2) Creation to serve a public purpose;
> (3) Power to have a common seal, to sue and be sued, to
> enter into contracts, to acquire, hold and dispose of
> its revenues, personal and real property;
> (4) Possession of the power of eminent domain;
> (5) Power to borrow money and issue bonds which are tax
> exempt, with interest on such bonds enjoying the same
> status under tax laws as the interest on bonds of other
> political subdivisions of the state; and
> (6) Management of the corporation vested in a board
> of directors or a commission.

Heckenlaible, 2006 WL 3196750, at *2-3; Smith, 193 Va. at 376-77.

Second, after determining how many and which attributes the agency possesses, the Court must "look at the purpose for which the entity is seeking to be treated as a municipal corporation." Heywood v. Va. Peninsula Reg'l Jail Auth., No. 2:15cv195, 2015 WL 5026188, *6 (E.D. Va. Aug. 21, 2015); Smith, 193 Va. at 376 ("The second [factor] is, in [] light of [how many attributes the entity possesses], what is the particular purpose for which it is sought to determine whether or not a municipal corporation is present?"). If the pivotal issue in the case "is one of procedure," it is more likely that the agency will be held "to be a municipal corporation." Smith, 193 Va. at 376 (citing Caldwell v. Board of Education, 216 N.Y.S. 501 (N.Y. App. Div. 1926) (holding that the board of education of New York City was a municipal corporation for the purposes of a statute that made it a condition precedent to make a claim to the board of a "municipal corporation" at least ten days before presenting suit if the action was only for money)). If the pivotal issue in the case is "a question of substantive law," the agency is less likely to be held "to be a municipal corporation." Id. (citing State v. Board of Park Comm'rs, 47 S.E. 2d 689 (W.Va. 1948) (holding that a city's board of park commissioners was not a municipal corporation for purposes of a West Virginia statute that required every "municipal corporation"

33

to publish a public statement of its financial condition under threat of a misdemeanor conviction should they fail or refuse)).

In regard to the first Smith factor, although courts are split on whether a municipal corporation requires all six attributes, this Court has now held three times "that VPRJA is not a municipal corporation because it is not a political subdivision and because it lacks the power of eminent domain." McCaffrey, 2019 WL 5445752, at *7-8 (citing Heywood, 2015 WL 5026188, at *6 and Heckenlaible, 2006 WL 3196750, at *3-4). That is, regardless of whether an entity requires all six attributes, an entity cannot be a municipal corporation if it lacks those two attributes as those attributes are the "most intrinsic to municipal corporations." Heywood, 2015 WL 5026188, at *6 (citing Short Pump Town Ctr. Cmty. Dev. Auth. v. Hahn, 554 S.E.2d 441, 446 (Va. 2001)); see also Finamore v. Trent, 95 Va. Cir. 38, 42-43 (City of Lynchburg 2016) (holding that the two attributes—designation as a body politic and eminent domain power—are fundamental attributes of a municipality) (citing Heywood, 2015 WL 5026188, at *7)).[13] VPRJA's lack of these two

---

[13] Of particular note, this Court in Heywood and McCaffrey considered the first attribute (creation as a body corporate and politic and as a political subdivision of the Commonwealth) as an intrinsic characteristic of municipal corporations. McCaffrey, 2019 WL 5445752, at *8 (citing Heywood, 2015 WL 5026188, at *14-15). As the Virginia Supreme Court explained, whether a local entity is a political subdivision is determined solely by referring to its enabling legislation. Short Pump, 554 S.E.2d at 447 ("the General Assembly clearly knows how to denominate an authority as a 'political subdivision' when it wishes to do so."). Designation as a political subdivision is an attribute of municipal character that is "exclusively vested in, and conferred by Virginia's legislature." Heywood, 2015 WL 5026188, at *14 (citing State Highway Comm'r of Va. v. Hooker Furniture

34

essential attributes therefore counsels against treating it as a municipal corporation. Heywood, 2015 WL 5026188, at *8; Heckenlaible, 2006 WL 3196750, at *3-4; McCaffrey, 2019 WL 5445752, at *7-8. However, the inquiry does not end there.

Regarding the remaining four attributes, VPRJA has been found to possess all four. Heywood, 2015 WL 5026188, at *6 ("A cross-check of § 53.1-95.7 and the six attributes of a municipality . . . reveals that VPRJ possesses four of the six."); Heckenlaible, 2006 WL 3196750, at *3 ("The parties agree that the Jail Authority possesses four of the six essential attributes of a municipal corporation."); McCaffrey, 2019 WL 5445752, *7 ("Of the six attributes of a municipal corporation, four were uncontested in Heywood and Heckenlaible, and the same four attributes remain uncontested in this case.") That is, VPRJA's authorizing statute § 53.1-95.7 provides Virginia jail authorities with the following attributes: (2) Creation to serve a public purpose; (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property; (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under

---

Corp., 198 S.E.2d 649, 650 (Va. 1973)). Va. Code Ann. § 53.1-95.7, which authorizes municipalities to create regional jail authorities and is VPRJA's authorizing statute, does not include language designating the jail authorities as political subdivisions. Accordingly, "in the absence of any statutory designation of [VPRJA] . . . as [a] 'political subdivision[],'" the Court concluded that VPRJA is "'not such an entity.'" McCaffrey, 2019 WL 5445752, at *8 (citing Short Pump, 554 S.E.2d at 447).

tax laws as the interest on bonds of other political subdivisions of the state; and (6) Management of the corporation vested in a board of directors or a commission. Va. Code § 53.1-95.7.[14] Therefore, VPRJA possesses four of the six attributes, but lacks the two that this Court has found to be "most intrinsic to municipal corporations." Heywood, 2015 WL 5026188, at *6.

Now that the Court has determined that VPRJA possesses four of the six attributes, it must turn to the second factor of the Smith inquiry, and "look at the purpose for which the entity is seeking to be treated as a municipal corporation." Heywood v. Va. Peninsula Reg'l Jail Auth., No. 2:15cv195, 2015 WL 5026188, *6 (E.D. Va. Aug. 21, 2015); Smith, 193 Va. at 376. The reason here—the pivotal issue in the case—is one of substantive law; VPRJA claims it is protected from this tort claim by sovereign immunity. "Undoubtedly, the application of the doctrine of sovereign immunity . . . involves a question of substantive law[]" because its availability "significantly affect[s] the result of [] litigation." Heywood, 2015 WL 5026188, at *7 (internal quotations omitted) (internal citations omitted). In addition, the possibility of sovereign immunity barring tort claims against VPRJA is a more "substantive" decision than the procedural issue

---

[14] Courts have found that this second element is met with respect to regional jail authorities because "the Virginia Supreme Court has held that the operation of a jail is a governmental function." McCaffrey, 2019 WL 5445752, at *9 (citing Franklin v. Town of Richlands, 170 S.E. 718, 719 (Va. 1933)).

in Caldwell, where the New York City board of education successfully claimed that the plaintiff had to present the claim to the board ten days prior to presenting a suit for monetary damages because it was a "municipal corporation". 47 S.E. 2d at 691-96. As the particular purpose for which we are seeking to determine whether or not VPRJA should be treated as a municipal corporation here is substantive in nature, and in light of the four attributes it possesses, VPRJA will not be treated as a municipal corporation. Heywood, 2015 WL 5026188, at *7 ("With an issue of substantive law involved, the circumstances militate away from treating VPRJ[A] as a municipal corporation.").[15]

---

[15] This Court notes that the reasoning in McCaffrey, Heywood, and Heckenlaible, all differ slightly as to this second factor, although in each instance VPRJA was found to not be entitled to sovereign immunity as a municipal corporation. In Heckenlaible, the court did not reach the second factor "[b]ecause the Jail Authority d[id] not possess all six of the essential attributes of a municipal corporation." 2006 WL 3196750, at *4 n.4 (citing Hauth v. Se. Tidewater Opportunity Project, Inc., 420 F. Supp. 171, 173-74 (E.D. Va. 1976)) (emphasis added). In Heywood, the court did reach the second factor, even though VPRJA possessed only four attributes, and found that "VPRJ's lack of attributes unique to municipal corporations, coupled with the substantive issue presented, renders it inappropriate for the court to treat VPRJ as a municipal corporation for purposes of sovereign immunity." Heywood, 2015 WL 5026188, at *8 (emphasis added). In McCaffrey, the court also reached the second factor even though VPRJA only possessed four attributes—and not the two it considered to be "intrinsic"—but, curiously, it grafted the Supreme Court of Virginia's general sovereign immunity test asking if the agency's action was a governmental or proprietary function onto the substantive v. procedural test from Smith. McCaffrey, 2019 WL 5445752, at 8-9 ("While courts have taken divergent approaches in applying the second factor, the most persuasive approach requires examining whether the local entity is performing a function that is governmental or proprietary.") (citing City of Chesapeake v. Cunningham, 268 Va. 624, 633 (2004)). In doing so, the court in McCaffrey found that "because VPRJA is not a political subdivision and does not have the power of eminent domain, it is not a municipal corporation under the first factor," even though it had found the second factor of the Smith inquiry to be satisfied after perhaps conflating the general sovereign immunity test (governmental v. proprietary) with the second Smith factor test (substantive v. procedural)

For the reasons stated above, the Court finds that VPRJA is not a municipal corporation and therefore is not entitled to sovereign immunity.[16]

---

so that performing a governmental function made the availability of a sovereign immunity defense more likely, similar to the effect of a procedural issue under Smith. Id. (emphasis added).

This Court finds Heywood's approach—considering both factors and implementing the substance v. procedure test from Smith for the second factor—to be the approach closest to that laid out by the Virginia Supreme Court in Smith. See Smith, 193 Va. 371, 376-78 ("While it is true that the more attributes of a municipal corporation an agency has the more likely it is to be treated as a municipal corporation, the final decision rests on the specific issue of each case. Our analysis of the plethora of decisions on this subject is that a commission, such as that before us, may be held to be a municipal corporation for some purposes, but not for others."); see also Hampton Redevelopment, 217 Va. 30, 33-34 (1976) (laying out Smith's substance v. procedure inquiry as the second factor of the inquiry, and then considering whether the action was a governmental or proprietary function to help guide the inquiry as to a municipal housing authority). In addition, grafting the proprietary v. governmental function test for sovereign immunity onto the second factor from Smith seems to put the cart before the horse; the Smith inquiry is meant to determine whether an agency should be treated as a municipal corporation for purposes of determining whether it then deserves sovereign immunity in the instant case.

[16] Defendant VPRJA cites several cases which have held that regional jail authorities are entitled to sovereign immunity. E.g., Dowdy v. Pamunkey Reg'l Jail Auth., No. 3:14-cv-003-JAG, 2014 WL 2002227, at *3 (E.D. Va. May 30, 2014) (holding that a regional jail authority has sovereign immunity under Virginia law, and dismissing the plaintiff's claims); Wendt v. Overton, 98 Va. Cir. 220 (2018) (same). As suggested in McCaffrey, these cases are less compelling because they do not relate to the particular jail authority in question, VPRJA. 2019 WL 5445752, at *7 ("As it relates to the specific jail authority at issue, this Court has twice held that VPRJA is not a municipal corporation[.]"). Both Dowdy and Wendt involved the Pamunkey Regional Jail Authority. More importantly, as discussed in McCaffrey, this Court finds compelling reasons that dictate a different result. In Dowdy, for instance, with respect to the first attribute of whether the entity is a political subdivision, the Court conceded that "Virginia law does not designate a jail authority as a political subdivision," but found that jail authorities should be considered a political subdivision because they are created by municipalities, which are themselves political subdivisions. Dowdy, 2014 WL 2002227, at *3. This analysis runs counter to the Virginia Supreme Court's clear direction in Short Pump that courts must look at the authorizing statute to determine whether an entity is a political subdivision.

## D. **Government Official Immunity**

Defendant Wheeler argues that he is immune from the state law claim of negligence alleged against him in Count V because of Va. Code § 15.2-1405, which states:

> The members of the governing bodies of any locality or political subdivision and the members of boards, commissions, agencies and authorities thereof and other governing bodies of any local governmental entity, whether compensated or not, shall be immune from suit arising from the exercise or failure to exercise their discretionary or governmental authority as members of the governing body, board, commission, agency or authority which does not involve the unauthorized appropriation or misappropriation of funds. However, the immunity granted by this section shall not apply to conduct constituting intentional or willful misconduct or gross negligence.

There is no dispute that Wheeler, as Chairman of the VPRJA Board of Directors, is a member of the governing body of a local authority, i.e. VPRJA, and could receive the immunity conferred by this statute. However, the statute explicitly excludes immunity for "intentional or willful misconduct or gross negligence." Id.

In Virginia, gross negligence is defined as "'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" Commonwealth v. Giddens, 816 S.E.2d 290, 294 (Va. 2018) (quoting Cowan v. Hospice Support Care, Inc., 603 S.E.2d 916, 918 (Va. 2004)). Negligence may also be the result of willful or intentional acts. Morris v. Peyton, 139 S.E. 500, 504 (Va. 1927) ("the conduct of the driver might be considered wanton or

39

willfully negligent while he was aware of the perilous position of the trespasser").

Here, Plaintiff alleges Wheeler had "actual knowledge of high rates of sexual assaults on female prisoners by guards at VPRJ[A] . . . for many years when female prisoners were required to be confined with unsupervised, unmonitored, and unchaperoned male guards." Am. Compl. ¶ 12. This allegation is borne out by the previous cases in this Court brought by inmates after VPRJA prison guards sexually assaulted them and were convicted of sexual assault. See, e.g., Heywood, 217 F. Supp. 3d at 900; Heckenlaible v. Va. Peninsula Reg'l Jail Auth., 491 F. Supp. 2d 544, 546-47 (E.D. Va. June 13, 2007). Despite such actual knowledge that their policy, of "requiring female prisoners to be alone with unsupervised, unmonitored, and unchaperoned male guards," led to sexual assaults, Wheeler allegedly continued this policy. Am. Compl. ¶¶ 12-13.

These allegations are sufficient to demonstrate that Wheeler's lack of action, despite alleged knowledge that VPRJA's policies led to the substantiated sexual assault of inmates, was, at least, grossly negligent as it suggests utter disregard for the safety of those inmates. See Heckenlaible, 491 F. Supp. 2d at 555 n.6 (noting that a finding that leaving a male prison guard alone with a female inmate is not unconstitutional, but it may still be negligent, as this finding "does not necessarily compel the

40

conclusion that misconduct of a sexual nature is not foreseeable when the operator of a prison facility assigns a male to be the sole correctional officer in an area that houses female inmates, including some that might be particularly vulnerable to a sexual assault or other abuse due to mental or physical limitations, and which also requires the correctional officer to briefly observe the inmates while they shower."). Therefore, the Court cannot conclude, at the motion to dismiss stage of this case, that Wheeler is entitled to the immunity conferred by Va. Code § 15.2-1405.

## E. Special Relationship

Finally, the Court addresses Defendants Kuplinski, Wheeler, and VPRJA's argument that Count V for negligence must be dismissed on the grounds that Plaintiff has failed to state a claim because no duty of care existed as to Plaintiff in the absence of a special relationship.[17]

The elements of a negligence claim, under Virginia law, are

---

[17] In their joint reply brief, Defendants Wheeler and VPRJA make this argument for the first time. The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum such as this argument is waived and will not be considered. See United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006). However, in this case, Plaintiff later moved the Court to allow for supplemental briefing about the issue of special relationships in light of the Virginia Supreme Court's decision in A.H. by Next Friends C.H. v. Church of God in Christ, Inc., 297 Va. 604 (2019). ECF No. 41. This motion was granted, ECF No. 43, and all parties provided a supplemental brief regarding this issue. ECF Nos. 44, 46, 48. As Plaintiff requested the supplemental briefing and had an opportunity to consider the issue, the usual fear of considering an argument first made in a reply brief is not present, as the Plaintiff had an opportunity to argue the issue as to Defendants Wheeler and VPRJA. Therefore, the Court will consider the argument.

41

the existence of a duty, a breach of that duty, causation, and damages. Burdette v. Marks, 244 Va. 309, 311 (1992). However, a public official does not owe a duty to act on behalf of the general public. Marshall v. Winston, 389 S.E.2d 902, 905 (Va. 1990) ("[A] distinction must be drawn between a public duty owed by the official to the citizenry at large and a special duty owed to a specific identifiable person or class of persons. Only a violation of the latter duty will give rise to civil liability of the official.") (citing Orzechowski v. State, 485 A.2d 545, 548 (R.I. 1984)). That is, there must be a "special relationship" or "special duty" owed by the public official to an identifiable person. Burdette, 244 Va. at 312.

When there is a "special relationship . . . 'between the defendant and the plaintiff,'" the common law recognizes a duty to protect the plaintiff. A.H. by Next Friends C.H. v. Church of God in Christ, Inc., 297 Va. 604, 619 (2019) (quoting Brown v. Jacobs, 289 Va. 209, 215 (2015)). However, the resulting duty "only exists when the defendant could have foreseen the need 'to take affirmative action to protect [the plaintiff] from harm.'" Id. at 620 (quoting Burns v. Gagnon, 283 Va. 657, 669 (2012)). "The degree of foreseeability required 'depends on the nature of the special relationship.'" Id. (quoting Commonwealth v. Peterson, 286 Va. 349, 357 (2013)).

Although Defendants Kuplinski, Wheeler, and VPRJA are correct

that the Virginia Supreme Court has never directly addressed the duty of care owed by a prison official to a prisoner, it appears that courts that have considered the issue have found that prison officials are in a "special relationship" with inmates such that they owe a duty of care. Such courts have found that prison officials' duty to inmates is suggested in § 314A of the Restatement (Second) of Torts ("Restatement" or "R2T")(1965), which imposes a duty on "[o]ne who is required by law to take . . . the custody of another under circumstances such as to deprive the other of his normal opportunities for protection[.]" Kikumura v. Osagie, 461 F.3d 1269, 1301 (10th Cir. 2006) (citing R2T § 314A), overruled on other grounds by Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008). Section 314A is applicable to prison officials "because the [] officials who have custody of [the plaintiff] are like those contemplated within . . . this section who are 'required by law' to take or 'who voluntarily' take 'the custody of another under circumstances such as to deprive the other of his normal opportunities for protection.'" Coffey v. United States, 906 F. Supp. 2d 1114, 1170 (D.N.M. 2012); accord Slaven v. City of Salem, 438 N.E.2d 348, 349 (Mass. 1982) ("The Restatement (Second) of Torts recognizes the duty of a jailor as being similar to the duty of common carriers or innkeepers.").

Although the Virginia Supreme Court has not specifically addressed the duty of care owed by a prison official to a prisoner,

a review of Virginia's existing duty of care case law is instructive. "Virginia law does recognize . . . that a special relationship exists between a vulnerable individual in a custodial relationship and his or her custodian. That relationship, if proven, imposes a duty of reasonable care upon the custodian to protect the vulnerable individual in his custody." A.H. by Next Friends C.H., 297 Va. at 622 (holding that a church did have a special relationship with a child who repeatedly visited the house of a deacon in the church's employment for the purpose of attending church events, where she was sexually assaulted by the deacon); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132-36 (2000) (finding a special relationship between a woman with a history of being sexually assaulted and the psychiatric hospital she was committed to, where she was sexually assaulted by another patient).

These Defendants have not identified any case that has held that prison officials do not owe a duty of care to their prisoners,[18] and this Court sees no reason to depart from the

_____

[18] Defendants Kuplinski, Kuplinski Memo at 11, and VPRJA and Wheeler, VPRJA & Wheeler Reply at 3, argue that Marshall v. Winston, 239 Va. 315 (1990) counsels against finding a special relationship here. In Marshall, a sheriff wrongly released an inmate from jail and the inmate then killed a member of the public during a robbery. 239 Va. at 317. The Virginia Supreme Court held that there was not a special relationship between the sheriff and the administrator of the victim's estate because the complaint did not allege that the sheriff knew of the particular facts in the case that showed the inmate to be a dangerous individual, and it only identified the citizenry at large as the person to whom a duty was owed rather than an identifiable class of people. Id. at 318-21. In the instant matter, the Plaintiff has alleged that these Defendants knew about their alleged dangerous policy, and have identified the inmates of VPRJA, an identifiable class of people, as the people to whom a duty is owed. Additionally, the special relationship

44

reasoning of the Restatement, the decisions directly on point by other courts, and Virginia's recognition of a custodian/vulnerable individual special relationship. Plaintiff has alleged facts from which it can be concluded that these Defendants could have foreseen that leaving female prisoners alone with unsupervised male guards in an environment with high rates of sexual assault would lead to harm to Plaintiff. Am. Compl. ¶¶ 12, 25. Accepting as true all of the factual allegations contained in the Amended Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to demonstrate a special relationship with Defendants Kuplinski and VPRJA to satisfy the duty element of her negligence claim at this stage. Therefore, the motions to dismiss the negligence claim are **DENIED** as to those two Defendants.[19]

---

alleged here is between Defendants and an inmate in the jail, not a third-party. As such, Marshall is inapposite.

[19] Defendant Kuplinski also attempts to recast the negligence claim as one for negligent supervision, which Virginia does not recognize as a cause of action. See Chesapeake & Potomac Tel. Co. of Virginia v. Dowdy, 365 S.E.2d 751, 754 (Va. 1988). Kuplinski asks the Court to take too narrow a view of the claim. Plaintiff alleges that as a prisoner at VPRJA, she was in a "special relationship" with Defendants, which "gave rise to a duty imposed on them to make reasonable efforts to provide for her safety." Am. Compl. ¶ 46. It is the general failure to act with reasonable care that is the basis of the negligence claim, and is not limited to exercising supervision over Rhim. For instance, in Heckenlaible, the Court suggested that VPRJA's policy of "assign[ing] a male to be the sole correctional officer in an area that houses female inmates, including some that might be particularly vulnerable to a sexual assault or other abuse due to mental or physical limitations, and which also requires the correctional officer to briefly observe the inmates while they shower" may be the basis of a negligence claim. 491 F. Supp. 2d at 555 n.6; see also A.H. by Next Friends C.H., 297 Va. at 626 n.14 (The Virginia Supreme Court "has not recognized a special-relationship duty on the part of an employer to control the conduct of his

However, the motion to dismiss the negligence claim as to Defendant Wheeler is **GRANTED**, because "[t]he scope of the duty arising from a custodial relationship is circumscribed by temporal and geographic limitations," and Plaintiff has failed to sufficiently allege that Defendant Wheeler was in a custodial relationship to her at the time of the assaults. Gniadek v. Camp Sunshine at Sebago Lake, Inc., 11 A.3d 308, 315 (Me. 2011) (citing R2T § 314A cmt. c). Comment c. to § 314A of the Restatement states that the custodial relationship applies "only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation." R2T § 314A cmt. c. (emphasis added). Plaintiff alleges that Defendant Wheeler was Chairman of the VPRJ Board of Directors in 2016 and "perpetuated the policy, practice, and custom . . . which proximately caused injury to Plaintiff during April, May, and June, 2017," but she does not allege that he was Chairman when the injury occurred in 2017, only that his policy was still in place. Am. Compl. ¶ 6. Without more, Plaintiff has not shown Defendant Wheeler to have been in a special relationship with her in 2017, and the claim must be dismissed as to Defendant Wheeler. See R2T § 314A cmt. c. ("A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a

---

on the special relationship alleged to have existed between [the plaintiff] and the church defendants.").

46

guest who is injured or endangered while he is away from the premises. Nor is a possessor of land under any such duty to one who has ceased to be an invitee."). Count V, therefore is **DISMISSED** as to Defendant Wheeler.

### IV. CONCLUSION

For the reasons stated above, VPRJA and Wheeler's joint Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. ECF No. 31. No Counts as to VPRJA are dismissed. Counts I and V as to Wheeler are dismissed.[20] Kuplinski's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. ECF No. 34. Count I as to Kuplinski is dismissed. Count V as to Kuplinski is not dismissed.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                /s/_____

                               Mark S. Davis
            CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 4 , 2020

---

[20] Because this Order dismisses all claims asserted against Wheeler, the Clerk is **DIRECTED** to terminate Wheeler as a Defendant in this action as of the date of entry of this Order. Pursuant to FRCP 54(a) and (b), the dismissal of Plaintiff's claims against Wheeler will not be a final judgment for purposes of appeal until the Court has also resolved Plaintiff's remaining claims against the remaining Defendants.